Exhibit 21



December 15, 2016

Michael F Scanlon
michael.scanlon@klgates.com

T +1 202 661 3764

**VIA E-MAIL and U.S. MAIL**

David J. Tubman Jr.
Chief Counsel
U.S. Maritime Administration
U.S. Department of Transportation
West Building
1200 New Jersey Avenue, SE
2nd Floor, Room W22-318
Washington, DC 205090-9898

Dear Mr. Tubman:

This firm represents Matson Navigation Company, Inc. This letter follows the December 12, 2016 letter from Matthew Cox, President and CEO of Matson, to U.S. Maritime Administration (MARAD) Administrator Jaenichen challenging APL's right to receive MSP payments for the operation of the APL GUAM and APL SAIPAN (the APL Vessels) in domestic trade serving Guam. Matson believes MARAD's decision to allow APL to operate vessels enrolled in the Maritime Security Program (MSP) in regular liner service to Guam is contrary to the language and purpose of the Maritime Security Act of 2003 (MSA), as amended, and the MSP implementing regulations, and that MARAD must take immediate action to remedy the situation.

MSP Background

Congress has long-recognized that the costs of building, manning, and operating U.S.-flag vessels are higher than comparable costs for foreign flag vessels. Congress also recognizes that maintaining a U.S.-flag presence in international commercial shipping is a critical economic and military security asset for the United States. Accordingly, since 1936 Congress has supported promotional programs to help maintain a U.S.-flag presence in the international trades. The MSP continues that policy today. The MSP is a national defense program designed to maintain a fleet of active, commercially viable, privately owned vessels to meet national defense and other security requirements and to maintain a United States presence in international commercial shipping.

Promotional assistance programs have always been accompanied by appropriate limitations to ensure that U.S.-flag vessels receiving assistance payments do not enter into domestic trades in competition with other unsubsidized U.S.-flag vessels. For example, the two programs that preceded the MSP, the construction differential subsidy program (CDS), *see* 46 U.S.C. § 1151 *et seq.*, and the operating differential subsidy (ODS) program, *see* 46 U.S.C. § 1171 *et seq.*, both required that subsidy payments be forfeited or repaid for vessel operations in non-qualifying domestic trades.

K&L GATES LLP
1601 K STREET NW   WASHINGTON   DC 20006
T +1 202 778 9000  F +1 202 778 9100  klgates.com

Similarly, Congress never intended that vessels participating in the MSP would be permitted to compete against other U.S.-flag vessels in the domestic trades. To the contrary, Congress recognized that allowing U.S.-flag vessels that were enrolled in the MSP to operate in domestic trades in direct competition with other U.S.-flag vessels that did not receive MSP assistance would be "fundamentally unfair." 139 Cong. Rec. H. 8832 (Nov. 4, 1993). Accordingly, Congress sought to restrict the operation of "subsidized [MSP] vessels [to] operate exclusively in foreign trade. This restriction is intended to protect [] the operators of unsubsidized vessels in the protected domestic trades." 139 Cong. Rec. H8760 (Nov. 3, 1993).

Because the MSP is intended to provide financial assistance to vessels engaged in foreign commerce, the MSA and MSP implementing regulations require as a condition of vessel eligibility that "the vessel is operated . . . in providing transportation in foreign commerce." 46 U.S.C. § 53102(b)(2); 46 C.F.R. § 296.11(a)(2). As an additional safeguard the MSA requires a *pro rata* reduction in payment for each day a covered vessel is operating in a non-qualifying domestic trade. *See* 46 U.S.C. § 53106(d)(3); 46 C.F.R. § 296.41(b).

APL's Guam Saipan Express Service

In December 2015, immediately after MARAD approved its vessel replacement request under MSP Operating Agreement MA/MSP-54, APL moved the APL GUAM, a covered MSP vessel, into regular liner service to Guam. The vessel is transporting goods between the U.S. West Coast and Guam via trans-shipment in Busan, South Korea. An APL press release dated October 12, 2015 stated that the new service was designed to provide shippers "an alternative for shipping from the U.S. mainland." A copy of the APL press release is attached as Exhibit 1.

APL plans to introduce a second vessel, the APL SAIPAN, in regular liner service to Guam as part of its Guam Saipan Express (GSX) service later this month. In public statements, APL has acknowledged that the GSX service is designed to facilitate cargo shipments from the U.S. mainland via connecting service in Busan, South Korea or Yokohama, Japan. APL's General Manager, Guam/Micronesia, is quoted in the press stating that the GSX service will be used for "cargo shipments from the U.S. mainland to the islands, especially Guam where 75% of the inbound freight originate from the U.S. mainland." A copy of the article is attached as Exhibit 2.

APL marketing materials distributed via email and the company's website advertise the GSX service as providing "[w]eekly P1 U.S. flag service departures from the U.S. West Coast ports to Guam and Saipan via [Busan and Yokohama]" and "[w]eekly U.S. flag direct service, connecting Guam and Saipan . . . via Busan and Yokohama." A copy of the marketing brochure is attached as Exhibit 3. Accordingly, APL acknowledges that it is currently operating and that it intends to operate the APL GUAM and the APL SAIPAN, both covered MSP vessels, in regular liner service to Guam. The vessels will be primarily engaged in the transportation of cargo that originates in the U.S. mainland and is destined for Guam.

Matson welcomes fair competition in the domestic trade between the U.S. West Coast and Guam. APL's introduction of one or two MSP vessels in regular liner service to Guam is not fair competition. It is distorting the market and creating an unlevel playing field. APL has an unfair competitive advantage because its U.S.-flag vessel is receiving an MSP stipend while operating in a domestic trade in direct competition with other U.S.-flag vessels that do not receive MSP assistance. If MARAD allows APL to add a second MSP vessel into the Guam trades, Matson and others will suffer even greater harm from the unfair competition.

## The APL Vessels Operating in Regular Liner Service to Guam are Engaged in Domestic Trade, Not Foreign Commerce

The MSA defines "foreign commerce" as "commerce or trade between the United States, its territories or possessions, or the District of Columbia and a foreign country; and . . . commerce or trade between foreign countries." 46 U.S.C. § 53101(4). The MSA defines the "United States" as "includ[ing] the District of Columbia, the Commonwealth of Puerto Rico, the Northern Mariana Islands, Guam, American Samoa, the Virgin Islands." 46 U.S.C. § 53101(11).

The MSA's implementing regulations further define the terms "coastwise trade" and "domestic trade" to mean "trade between points in the United States." 46 C.F.R. § 296.2. The APL vessels operating in regular liner service in Guam are transporting goods between two points in the United States, which is by definition domestic trade, not foreign commerce.

APL cannot circumvent this limitation by transporting goods between points in the United States (CONUS and Guam) via a foreign port (Busan, South Korea or Yokohama, Japan). The APL vessels are transporting goods between two points in the United States. That is true regardless of whether the transportation of goods between those two points is direct or via a foreign port; in either case there is no "trade" with a foreign country or "foreign commerce" as required by the MSA. 46 U.S.C. § 53101(4).

There is likewise no support in the implementing regulations for construing APL's operation of regular liner service to Guam as foreign commerce. The implementing regulations define "foreign commerce" as:

> For any vessel other than a liquid or a dry bulk carrier, a cargo freight service, including direct and relay service, operated exclusively in the foreign trade or in mixed foreign and domestic trade allowed under a registry endorsement under section 12105 of title 46, United States Code, where the origination point or the destination point of any cargo carried is the United States, regardless of whether the vessel provides direct service between the United States and a foreign country, or commerce or trade between foreign countries.

46 C.F.R. § 296.2. The MSP implementing regulations recognize that "mixed foreign and domestic trade" may be allowed under a registry endorsement under 46 U.S.C. § 12111, but for MSP purposes a vessel is engaged in "foreign commerce" only "where the origination point or the destination point of any cargo carried is the United States, regardless of whether the vessel provides direct service between the United States and a foreign country, or commerce or trade between foreign countries." 46 C.F.R. § 296.2.

The regulatory definition contemplates that the cargo must have either an "origination point" or a "destination point" in the United States. *Id.* Goods that have both an origination point and a destination point in the United States are being transported between points in the United States which, by definition, is "domestic trade" or "coastwise trade." *Id.*

The transshipment of the cargo in South Korea or Japan is insufficient to qualify the trade as foreign commerce because the goods never enter and are never intended to enter the stream of commerce in a foreign country. The object of the movement is to transport the goods between two points within the United States. Although the Jones Act, 46 U.S.C. § 55102, does not cover Guam, the treatment of goods transported between points in the United States via a foreign port under the Jones Act is analogous. The seminal Jones Act case on this point is *The Bermuda. See* 70 U.S. 514 (1865). In that case the Supreme

3

Court held that "transportation from one coastwise point to another remains continuous, so long as intent remains unchanged, no matter what stoppages or transshipments intervene." 70 U.S. at 553; *see also* CBP Ruling HQ 116718 (Sep. 7, 2006) ("an intent to export merchandise after its transportation from the United States to an intermediate foreign port is not, by itself, sufficient to break the continuity of the transportation when the merchandise is transported onward from the intermediate foreign port to a second point in the United States.").

In a related case the U.S. District Court for the District of Columbia rejected a prior agency interpretation allowing a subsidized carrier to engage in otherwise prohibited coastwise trade between points in the United States via transshipment in a foreign port where the result would have ben contrary to the intent and purpose of the ODS. *See Sea-Land Service, Inc. v. Dole*, 596 F. Supp. 1143, 1145-48 (D.D.C. 1984)("the Court found it to be arbitrary, capricious, an abuse of discretion, and contrary to law to interpret a provision barring coastwise trade by subsidized lines such as APL in a way that permitted a subsidized line such as APL to engage in coastwise trade. Such an interpretation, . . . flew in the face of the clear statutory intent . . . which was to protect unsubsidized lines . . . from competition by subsidized lines such as APL on domestic cargo routes." (citations omitted)).

APL's public statements confirm that the object of its GSX service is to transport goods from one point in the United States (CONUS) to another point in the United States (Guam). Accordingly, the APL vessels operating in regular liner service to Guam are engaged in domestic trade, not foreign commerce.

<u>To the Extent the APL Vessels are Eligible to Participate in the MSP, They are Not Eligible to Receive MSP Payments While Operating in Regular Liner Service to Guam</u>

To be eligible to participate in the MSP a vessel must be "operated...in providing transportation in foreign commerce." 46 U.S.C. § 53102(b)(2); *see also* 46 C.F.R. § 296.11(a)(2) ("[a] vessel is eligible to be included . . . if . . [it] is operated . . . to provide transportation in the foreign commerce."). For the reasons stated above, the APL vessels are operating in domestic trade, not foreign commerce. Therefore, the APL vessels cannot satisfy the eligibility provisions in the MSA and the implementing regulations. To the extent the APL vessels are eligible to participate, they are not entitled to receive MSP payments for any day the vessel operates in regular liner service in Guam carrying cargo in domestic trade.

The APL vessels also cannot meet the vessel operating limitations. The MSP implementing regulations state that during the period the vessel is covered by an MSP operating agreement it "shall . . . [b]e operated exclusively in the foreign commerce, . . . and shall not otherwise be operated in the coastwise trade of the United States." 46 C.F.R. § 296.31(d)(2). MARAD has a right to expect that when a vessel operator signs an MSP operating agreement the operator will comply with this mandatory limitation. The APL vessels cannot satisfy the operating limitation because they are not being operated "exclusively in the foreign commerce," the vessels are being operated in a "domestic" or "coastwise trade."

The operating limitation in the MSA states that during the period a vessel is covered by an MSP operating agreement the vessel: "(A) shall be operated exclusively in the foreign commerce or in mixed foreign commerce and domestic trade allowed under a registry endorsement issued under section 12111 of this title; and (B) shall not otherwise be operated in the coastwise trade[.]" 46 U.S.C. § 53105(a)(1). A review of the legislative history with respect to the Guam trade is helpful in reconciling the language of section 53105(a)(1) with the vessel eligibility language in section 53102(b)(2) and with the operating limitations in section 296.31(d)(2) of the regulations.

December 15, 2016

Both the ODS and CDS permitted participating vessels to engage in incidental trade in Guam as "an island possession or island territory of the United States," provided the vessel was engaged "on a voyage in foreign trade." *See* Merchant Marine Act, 1936, § 506, 46 App. U.S.C. § 1156; § 605(a), 46 App. U.S.C. § 1175(a). The ODS and CDS treated trade with Guam differently with respect to the restrictions on subsidized operations. Although both the ODS and CDS allowed vessels to call on Guam as part of a *bona fide* "foreign voyage," the ODS treated Guam as a point eligible for subsidized service, however, no subsidy would have been awarded to the extent the trade was prejudicial to other U.S. citizens operating U.S.-flag vessels operating in the trade. *See* 46 App. U.S.C. § 1175(a) and (c). The CDS required repayment of a portion of the subsidy for that same trade. *See* 46 App. U.S.C. § 1156. The APL vessels could not satisfy either provision because both the ODS and CDS required that the stop in Guam be part of a *bona fide* foreign voyage. The APL vessels are not engaged in a *bona fide* foreign voyage, because the vessels are operating in domestic trade, transporting cargo between two points in the United States.

The legislative history of the MSA also reveals tension with respect to the permissibility of allowing MSP vessels to enter the Guam trade. The operating limitations in the predecessor House bill, H.R. 2151, were more permissive. H.R. 2151 would have allowed MSP vessels to operate in trades "allowed under a registry endorsement for the vessel issued under section 12105 of title 46, United States Code." Maritime Security and Competitiveness Act of 1993, H.R. 2151, 103d Cong. § 3 (1993). In contrast, the Senate bill in the same Congress, S. 1945, specifically stated that MSP vessels "(A) shall be operated exclusively in the foreign trade, and (B) shall not be operated in the coastwise trade of the United States or in mixed domestic and foreign trade." S. 1945, 103d Cong. § 202 (1994). Thus the Senate bill would not have allowed MSP vessels to operate in the Guam trades.

The statutory and regulatory eligibility and vessel operating limitations language must also be read in concert with the MSP payment provisions. Section 53106(b) requires an MSP contractor to certify that it will operate the vessel "for at least 320 days" in each fiscal year exclusively in foreign trades and not in "coastwise" trades. 46 U.S.C. § 53106(b). The MSP implementing regulations state:

> The annual amount otherwise payable under an MSP Operating Agreement shall be reduced on a pro rata basis for each day less than 320 in a fiscal year that an Agreement Vessel:
> (i) Is not operated exclusively in the foreign commerce, . . .;
> (ii) Is operated in the coastwise trade.

46 C.F.R. § 296.41(b)(i)-(ii).

To the extent the APL vessels operating in regular liner service to Guam are carrying goods between two points in the United States they are engaged for purposes of the MSP in "coastwise trade," not foreign commerce. Accordingly, even if the APL vessels are eligible to participate in the MSP, they are not eligible to receive MSP payments while operating in regular liner service to Guam.

## APL Vessels Operating in Regular Liner Service to Guam Do Not Satisfy the Minimum Operating Requirements

In addition to the vessel operating limitations and the related MSP payment provisions discussed above, the MSP implementing regulations and the MSP operating agreements impose minimum operating requirements for MSP vessels. Specifically, Article I-19(d) of the MSP operating agreement states "[o]perating the Vessel . . . in trades . . . resulting in the Vessel being operated exclusively in the United States foreign commerce for fewer than one-hundred eighty (180) days in any fiscal year" constitutes an

December 15, 2016

event of default. *See also* 46 C.F.R. § 296.21(f) (citing 180 day minimum operating requirement in qualifying foreign commerce).

The APL vessels operating in regular liner service in Guam are not being operated in foreign commerce, they are operating in a non-qualifying domestic trade. Not only does this require a *pro rata* reduction in the MSP subsidy paid to these vessels, but to the extent the vessels are not operating exclusively in foreign commerce for a minimum of 180 days in any fiscal year then APL is in default under the terms of the MSP operating agreements and MARAD should terminate the contracts.

Conclusion

For the foregoing reasons, APL cannot meet the requirements and conditions of the statute, implementing regulations, and operating agreements pursuant to the MSA for the operation of MSP vessels in foreign commerce. APL's request runs contrary to the core policy purposes of the MSP: assisting U.S.-flag vessels so they can compete in foreign commerce, while protecting U.S.-flag vessels operating in domestic trades from unfair competition. Therefore, MARAD must deny APL's request to replace one of its current MSP vessels with the APL SAIPAN. Should MARAD proceed to approve the replacement of the APL SAIPAN, it must deny MSP payments for any days the vessel operates in domestic trade, including regular liner service in Guam.

Additionally, MARAD must deny any future MSP payments to APL for the operation of the APL GUAM in a domestic trade. Moreover, MARAD should promptly determine whether the APL GUAM has met the minimum 180-day operating requirement for the preceding fiscal year, and, if APL is in default of that requirement, it should terminate the contract.

Sincerely,

Michael F. Scanlon

Enclosures

6

# Exhibit 1



## APL launches new U.S.-flagged Guam Saipan Express

**GUAM,  12 Oct 2015**

APL today introduced a new fortnightly U.S.-flagged service to Guam and Saipan. The Guam Saipan
Express (GSX) will connect with APL's weekly U.S.-flagged Eagle Express service (EX1) in Yokohama,
giving Guam and Saipan shippers an alternative for shipping from the U.S. mainland.

Apart from facilitating cargo shipments from the U.S. mainland, where about 75% of Guam's inbound
freight originates, GSX's connection in Yokohama allows Guam and Saipan shippers to tap into APL's
global service network for freight to and from many parts of the world.

"We are excited about this new addition to APL's global service network. We are confident that our
services, backed by our track record and familiarity with Guam's operating environment, will serve both the
U.S. government and local businesses well," said APL President, Kenneth Glenn. "The GSX service will
also provide new opportunities for global shippers to expand their business to Guam and Saipan."

A dedicated APL vessel of 1,100 TEU will service the route. The GSX service is scheduled for weekend
arrivals for ready cargo availability on Monday mornings in both Guam and Saipan. APL assured shippers
that they will be supported by a dedicated Guam support team.

The port rotation of GSX will be: Yokohama - Saipan - Guam – Yokohama. The first sailing of the new
GSX service is expected to depart Yokohama on 24 November 2015.

- End -

**Media enquiries**

Shirley Poo
Telephone: (65) 6371 5180
Email: shirley_poo@nol.com.sg

John Selleck
Telephone: (671) 588 4658/ (671) 971 1391
Email: john_selleck@apl.com

**About APL**

APL is a global container shipping business that combines high-quality intermodal operations with the

Exhibit 2

# APL Enhances Guam Saipan Express Service



Image Courtesy: APL

Singapore-based shipping company APL, part of French shipping major CMA CGM, plans to add a second vessel to its Guam Saipan Express (GSX) service, upgrading this US flagged service from a fortnightly to a weekly coverage.

The first sailing of the weekly service will commence in late December 2016 from Yokohama, Japan, according to APL.

Currently supported by the 1,100 TEU container ship, the APL Guam and soon, the 1,600 TEU APL Saipan, the enhanced GSX service will double its frequency calls to the ports of Busan (South Korea), Yokohama (Japan), Guam and Saipan (US), the company said.

Currently, APL's GSX service is facilitating cargo shipments from the US mainland via connecting service, Eagle Express service (EX1), in Busan and Yokohama.

*"The more frequent GSX service will speed up essential cargo shipments from the U.S. mainland to the islands, especially Guam where 75% of her inbound freight originate from the US mainland,"* John Selleck, APL General Manager, Guam/Micronesia, said.

Port rotation of the upgraded service will be as follows: Busan, Yokohama, Guam, Saipan, Busan.

Share this article          Follow World Maritime News

Posted on November 15, 2016 with tags APL, GSX, Guam Saipan Express.

Exhibit 3



# Guam Saipan Express (GSX)

APL's commitment to your business

**U.S. Mainland (Nashville, TN)**
Address: 26 Century Boulevard, Suite 405, Nashville 37214
Phone: 1-844-GUAMAPL (1-844-482-6275)   Email: US_Flag@apl.com
Mon - Fri, 07:00 -19:00hr, CST

**Guam:**
Address: 1026 Cabras Highway, Suite 115 Piti, GU 96915
Phone: (671) 588-4651   Email: Guam_Marianas@apl.com
Mon - Fri, 08:00 -17:00hr, GMT +10

**Saipan:**
Address: GIF-CPA Building, Port of Saipan, Saipan MP 96950
Phone: (670) 322-9978  (670) 322-9979   Email: Guam_Marianas@apl.com
Mon - Fri, 08:00 -17:00hr, GMT +10

Moving Business Forward

apl.com

# GSX - GUAM SAIPAN EXPRESS



## PORT ROTATION

| Port | City | Transit Day | Arrive | Transit Day | Depart |
|---|---|---|---|---|---|
| P&H | Busan | | | 00 | Thu |
| YOK | Yokohama | 03 | Sun | 03 | Sun |
| GUM | Guam | 07 | Thu | 07 | Thu |
| SPN | Saipan | 08 | Fri | 08 | Fri |
| P&H | Busan | 14 | Thu | | |

## TRANSIT TIMES

### Outbound EX1

| | < Busan | < Yokohama | < Los Angeles | < Oakland |
|---|---|---|---|---|
| Saipan > | 06 | 09 | 18 | 21 |
| Guam > | 07 | 10 | 19 | 22 |

### TRANSIT TIMES

| Inbound | < Guam | < Saipan |
|---|---|---|
| Busan > | 07 | 08 |
| Yokohama > | 04 | 09 |
| Oakland (via EX1) > | 19 | 20 |
| Los Angeles (via EX1) > | 21 | 22 |
| Tacoma (via NP1) > | * | 21 |
| Seattle (via NP1) > | * | 19 |
| Vancouver, BC (via NP1) > | 22 | 23 |

## THE APL ADVANTAGE

- Weekly Priority 1 U.S. flag service departures from the U.S. West Coast ports to Guam and Saipan via EX1
- Weekly U.S. flag direct service, connecting Guam and Saipan to APL's global network via Busan and Yokohama
- Supported by dedicated Guam Support Teams on the island and mainland
- Exclusively APL operated and managed vessels

## ABOUT APL

For over 165 years, APL has been the trusted partner for ocean transportation and logistics needs. Our customers rely on our maritime expertise to deliver safe, reliable solutions for their unique shipping requirements.

With our highly competitive transit times and commitment towards service excellence, we make your shipping choice simple. Whatever your shipping needs, we provide efficient options to suit your individual requirements.

## OUR EXPANDING NETWORK

With more than 90 weekly services calling ports in over 50 countries, APL's global network and expertise will help you strengthen your business – whether it is soaring into new territories or rising to greater heights in already established markets.

## OUR EQUIPMENT

Container options to preserve the value of your cargo all along the supply chain.

- Standard Container
  20', 40' Standard Steel Container
  40', 45' High Cube Steel Container
- Climate-controlled
  20', 40' High Cube Stainless Steel Reefer
- Special
  20', 40' Open Top Container
  20', 40' Collapsible Flat Rack Container



## APL'S DEDICATED VESSELS (U.S. FLAG)

| Vessel: | APL GUAM | APL SAIPAN |
|---|---|---|
| Capacity: | 1,100 TEU | 1,600 TEU |

*Service to Guam from the Pacific Northwest is provided over the road via Oakland