IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATSON NAVIGATION COMPANY, INC., <br><br>     *Plaintiff*, <br><br>   *v.* <br><br> DEPARTMENT OF TRANSPORTATION, MARITIME ADMINISTRATION, <br><br>     *Defendants*, <br><br>   and <br><br> APL MARINE SERVICES, LTD., and APL MARITIME, LTD., <br><br>     *Proposed Intervenor-Defendants*. | Civil Action No. 18-cv-2751-RDM |

**MOTION TO INTERVENE AS DEFENDANTS BY
APL MARINE SERVICES, LTD., AND APL MARITIME, LTD.**

APL Marine Services, Ltd., and APL Maritime, Ltd. (collectively, "APL"), hereby respectfully move to intervene as defendants in this action pursuant to Federal Rule of Civil Procedure 24. The plaintiff in this action, Matson Navigation Company, Inc., seeks review of a pair of decisions by the Maritime Administration ("MARAD"), in which the agency approved APL's requests to replace two of its vessels in the federal Maritime Security Program ("MSP"). Matson asks the court to set aside those decisions and to enjoin MARAD from making further payments to APL with respect to the two replacement vessels. *See generally* Compl. at 23-28 (Dkt. No. 1). Matson's action thus directly threatens APL's legally protected interests, providing APL with a right to intervene under Rule 24. APL previously intervened to defend against a challenge to the same MARAD orders brought by Matson in the Court of Appeals, which the

1

Court of Appeals dismissed for lack of jurisdiction. *See Matson Navigation Co. v. U.S. Dep't of Transp.*, 895 F.3d 799 (D.C. Cir. 2018).

Pursuant to Local Civil Rule 7(j), APL has attached a copy of its answer to Matson's complaint. Pursuant to Local Civil Rule 7(m), counsel for APL conferred with counsel for Matson and with counsel for the Department of Transportation and MARAD (the "federal defendants"). Matson does not oppose APL's motion to intervene. The federal defendants were not able to take a position on the motion because of the lapse in appropriations for the Department of Justice and the restrictions imposed by the Antideficiency Act, 31 U.S.C. § 1341 *et seq.*

## BACKGROUND

The MSP is the latest iteration of a longstanding federal effort to maintain a fleet of privately owned, militarily useful U.S.-flag vessels that can assist the United States in times of war or other emergencies. Through the MSP, Congress has authorized MARAD to maintain a fleet of vessels that can both meet national security needs and strengthen the United States' presence in international commercial shipping. *See* 46 U.S.C. § 53102(a). Program participants agree to make their ships available to the military during a time of war or other national emergency. *See id.* § 53107. In exchange, they receive an annual payment for each vessel enrolled in the MSP fleet. *See id.* § 53106(a). MSP participants have a statutory right to "replace a vessel under an operating agreement with another vessel" provided the new vessel satisfies section 53102(b)'s eligibility requirements and MARAD (in conjunction with the Department of Defense) approves the transfer. *Id.* § 53105(f).

The present dispute arises out of MARAD's decision to allow APL to replace two of its MSP vessels pursuant to section 53105(f). In December 2014, in light of changes in the market for global shipping services and evolving U.S. military needs, APL sought to transfer two of its

MSP operating agreements from larger vessels in the Middle East to two smaller vessels in the Pacific. Compl., Ex. 2 (Dkt. No. 1-7). MARAD approved the basic outlines of that request in January 2015. Compl., Ex. 3 (Dkt. No. 1-8). APL then proceeded to identify specific replacement vessels, submitting follow-on applications to MARAD in September 2015 and October 2016. Compl., Exs. 7, 14 (Dkt. Nos. 1-12, -19). MARAD approved those applications on October 21, 2015 and December 20, 2016, respectively. Compl., Exs. 12, 18 (Dkt. Nos. 1-17, -23). In doing so, MARAD concluded that APL's chosen vessels met all the statutory criteria for the MSP—including, as relevant here, that APL's replacement vessels would be "operated . . . in providing transportation in foreign commerce." *Id.*; *see* 46 U.S.C. § 53102(b)(2). Indeed, APL had made clear in its applications that the vessels would provide service between Guam and the Japanese port of Yokohama and thus would, among other things, import cargo from Asia to Guam and also export cargo from Guam to countries in Asia. Compl., Ex. 2, at 6.

Matson attempted to challenge both decisions before the agency, ultimately filing an administrative appeal. Compl., Ex. 22 (Dkt. No. 1-27). MARAD concluded, however, that Matson did not have standing to bring such an appeal, because it does not participate in the MSP. Compl., Ex. 24 (Dkt. No. 1-29); *see* 46 C.F.R. § 296.50(a). Matson then filed a petition for review of MARAD's decisions in the D.C. Circuit, invoking the Hobbs Act, 28 U.S.C. § 2342(3)(A). APL moved to intervene in that action, and the Court of Appeals granted APL's motion. *See* Order, *Matson Navigation Co. v. U.S. Dep't of Transp.*, No. 17-1144 (D.C. Cir. Sept. 15, 2017). The D.C. Circuit ultimately dismissed Matson's petition "for lack of jurisdiction under the Hobbs Act." *Matson*, 895 F.3d at 806. As to MARAD's 2015 vessel-replacement decision, the Court held that Matson did not file a timely petition for review, even assuming jurisdiction otherwise would have been available under the Hobbs Act. *Id.* at 804-05.

3

As to MARAD's 2016 vessel-replacement decision (and the 2017 denial of Matson's administrative appeal), the Court concluded that Hobbs Act jurisdiction was not available, and that Matson accordingly had to "initially pursue its challenge in the district court." *Id.* at 806.

In this action, Matson again seeks to challenge MARAD's 2015 and 2016 approvals of APL's replacement vessels. Matson once again alleges that APL's two replacement vessels are ineligible for the MSP program. The complaint asks this Court to "[d]eclare MARAD's approval of APL's vessel replacement requests unlawful," "[v]acate and set aside MARAD's approval of APL's vessel replacement requests," "[e]njoin MARAD from making any further subsidy payments to APL with respect to the [two replacement vessels], or, in the alternative, reduce the MSP subsidies pro rata," and "[e]njoin MARAD from approving the [two replacement vessels] under the MSP." Compl. at 28 (Prayer for Relief).

## ARGUMENT

**I.     APL Is Entitled To Intervene as of Right Under Rule 24(a).**

Federal Rule of Civil Procedure 24(a) provides, in pertinent part, that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under this rule, a party has an absolute right to intervene in an action if it establishes Article III standing and also satisfies four requirements: (1) the motion is timely; (2) the applicant has "a legally protected interest in the action"; (3) the action "threaten[s] to impair" the applicant's interests; and (4) no existing party will adequately represent the applicant's interests. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Secs.*, 136 F.3d 153, 156 (D.C. Cir. 1998)). APL easily satisfies each of these four requirements and also plainly has Article III standing to defend the eligibility of its two vessels to participate in the MSP.

4

*First*, this motion is timely.  APL is filing this motion shortly after the commencement of this action and before the federal defendants have filed their answer.  *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (holding that intervenor's motion was timely when filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer").  Intervention will not delay the proceedings or prejudice the parties in any way.

*Second*, APL has a legally protected interest in this suit.  A party may satisfy this prong of Rule 24(a) by, *inter alia*, demonstrating an economic interest that is directly implicated by the plaintiff's claim.  *See, e.g.*, *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (holding that the threat of economic loss satisfies the interest requirement under Rule 24(a)(2)).  Here, APL has obtained approval from MARAD for its two replacement vessels and, as a result of those approvals, receives annual payments pursuant to its MSP operating agreements.  Thus, APL has a clear, direct, and legally recognized economic stake in this litigation.

*Third*, this action threatens to impair APL's interests.  If Matson's request for relief is denied, APL's two replacement vessels will continue to participate in the MSP, and APL will continue to receive the applicable payments for those vessels.  But if Matson prevails, MARAD will be forced either to rescind its approvals (and thus to stop any further payments to APL for its two vessels) or to make pro rata reductions to the payments.  These potential outcomes—the exclusion of APL's replacement vessels from the MSP and the cessation or reduction of MSP payments—indisputably would "impair" APL's interests.  *Karsner*, 532 F.3d at 885.

*Fourth*, no party to this action is an adequate representative of APL's interests.  To satisfy this element of Rule 24(a), an applicant's burden is "minimal": it need show only "show[] that representation of [its] interest *may be* inadequate." *Trbovich v. United Mine Workers*, 404

U.S. 528, 538 n. 10 (1972) (emphasis added) (quotation marks omitted).  Here, where the existing defendants are two federal agencies, APL easily clears the bar.  Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" because an agency's obligation "is to represent the interests of the American people" writ large, not the more particular interests of a company or organization.  *Fund for Animals*, 322 F.3d at 736.  APL is concerned with ensuring that it has the opportunity to participate in the MSP program, as well as protecting its own commercial interests; the federal defendants are concerned with enforcing federal law and promoting the government's policy priorities.  Even if "[t]here may be some overlap" between APL's interests and those of the federal defendants, the federal defendants will not give APL's interests "the kind of primacy that [APL] would give them," nor will the federal defendants necessarily share APL's "appraisal" of the relevant facts.  *Id.* at 736; *see also Dimond*, 792 F.2d at 192-93 (holding that a governmental entity could not adequately represent the interests of a private corporation).

*Finally*, for the same reason that APL satisfies the second and third prongs of the Rule 24(a) test, it also has Article III standing to intervene.  The potential loss of MSP payments is an injury-in-fact directly traceable to the relief Matson seeks, and such an injury would therefore be redressed by a judgment upholding MARAD's decisions.  *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316-17 (D.C. Cir. 2015) (collecting decisions that have recognized an intervenor's standing where the intervenor "benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit"); *Fund for Animals*, 322 F.3d at 733 (holding that an intervenor had standing because it "would suffer concrete injury" in the form of economic loss if "the court were to grant the relief the plaintiffs seek").

## II. In the Alternative, the Court Should Grant APL Leave To Intervene Under Rule 24(b).

Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." The standard for intervention under that provision rule is a liberal one: "Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967), so long as intervention would not "unduly delay or prejudice the rights of the original parties," *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009). To intervene under Rule 24(b), a party is not required to show that existing parties will not adequately represent its interests. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (granting intervention where the court found the movant "satisf[ied] the three threshold requirements for permissive intervention:" "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and, (3) a claim or defense that has a question of law or fact in common with the main action").

As explained above, APL's intervention here is timely and would not prejudice the rights of the original parties or cause delay in these proceedings. Moreover, APL's claims plainly have a "question of law or fact" in common with the main action: in order to preserve its replacement vessels' participation in the MSP, APL opposes Matson's request for an order rescinding MARAD's approval of its replacement applications or enjoining its MSP payments. Accordingly, in the event the Court does not grant intervention as of right under Rule 24(a), it should grant APL leave to intervene under Rule 24(b)'s permissive standard.

## CONCLUSION

For the foregoing reasons, APL respectfully requests that the Court grant its motion to intervene as a defendant as of right pursuant to Rule 24(a). In the alternative, the Court should grant APL leave to intervene under Rule 24(b).

January 25, 2019                                    Respectfully submitted,

/s/ *Brian T. Burgess*
Brian T. Burgess (D.C. Bar No. 1020915)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001
Tel.: (202) 346-4000
Fax:  (202) 346-4444

Gerard J. Cedrone
   (*pro hac vice* application forthcoming)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000
Fax: 617-523-1231

*Counsel for APL Marine Services, Ltd., and APL Maritime, Ltd.*

## CERTIFICATE OF SERVICE

      Pursuant to LCvR 5.3, I hereby certify that, on January 25, 2019, I electronically filed the foregoing motion and all attachments with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system.  All participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

January 25, 2019                            Respectfully submitted,

                                                   /s/ Brian T. Burgess