IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATSON NAVIGATION COMPANY, INC.,

Plaintiff,

v.

DEPARTMENT OF TRANSPORTATION,

and

MARITIME ADMINISTRATION,

Defendants.

Civil Action No. 18-2751

**MATSON'S SUPPLEMENTAL BRIEF IN SUPPORT OF VACATUR**

Mark A. Perry, DC Bar No. 438203
MPerry@gibsondunn.com
Joshua M. Wesneski, DC Bar No. 1500231
JWesneski@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

*Counsel for Plaintiff Matson Navigation Company, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

ARGUMENT ........................................ 1

I. The 2016 Approval Has Serious Deficiencies ........................................ 1

II. Vacatur Would Not Be Disruptive ........................................ 6

CONCLUSION ........................................ 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agriculture*,
317 F. Supp. 3d 385 (D.D.C. 2018) ........................................4

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ........................................1, 6

*Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*,
— F. Supp. 3d —, 2020 WL 532392 (D.D.C. Feb. 3, 2020) ........................................2

*Defenders of Wildlife v. Jackson*,
791 F. Supp. 2d 96 (D.D.C. 2011) ........................................7

*Heartland Reg'l Med. Ctr. v. Sebelius*,
566 F.3d 193 (D.C. Cir. 2009) ........................................3, 4

*Humane Soc'y of U.S. v. Kempthorne*,
570 F. Supp. 2d 7 (D.D.C. 2008) ........................................2

*Humane Soc'y of U.S. v. Zinke*,
865 F.3d 585 (D.C. Cir. 2017) ........................................2

*Ne. Md. Waste Disposal Auth. v. EPA*,
358 F.3d 936 (D.C. Cir. 2004) ........................................4

*Otay Mesa Property, L.P. v. U.S. Dep't of the Interior*,
344 F. Supp. 3d 355 (D.D.C. 2018) ........................................2, 5

*Philbrick v. Azar*,
397 F. Supp. 3d 11 (D.D.C. 2019) ........................................2

*Pub. Emps. for Envtl. Responsibility v. U.S. Fish & Wildlife Serv.*,
189 F. Supp. 3d 1 (D.D.C. 2016) ........................................7

*Reed v. Salazar*,
744 F. Supp. 2d 98 (D.D.C. 2010) ........................................6, 7

*Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*,
67 F. Supp. 3d 373 (D.D.C. 2014) ........................................2

*SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*,
867 F.3d 180 (D.C. Cir. 2017) ........................................1, 2

*Williston Basin Interstate Pipeline Co. v. FERC*,
519 F.3d 497 (D.C. Cir. 2008) ....................................................................................4

*WorldCom, Inc. v. FCC*,
288 F.3d 429 (D.C. Cir. 2002) ....................................................................................4

**Statutes**

5 U.S.C. § 706 ....................................................................................................1

46 U.S.C. § 53102(b)(4)(B) ....................................................................................8

46 U.S.C. § 53104(a) ..............................................................................................8

**Regulations**

46 C.F.R. § 296.2 ....................................................................................................3

## ARGUMENT

The APA is unequivocal: "The reviewing court *shall* . . . hold unlawful and *set aside* agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (emphases added). This Court's decision is equally clear: "MARAD's 2016 Approval Order fails to satisfy basic APA requirements." MSJ Order 29. Specifically, "the agency either *completely failed to explain* its reasons for approving the replacement [vessel] or *entirely failed to consider* an important aspect of the question before it and thus failed to comply with the APA." *Id.* at 3 (emphases added).

The D.C. Circuit has held that a "court *must vacate* a decision that entirely failed to consider an important aspect of the problem." *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 867 F.3d 180, 185 (D.C. Cir. 2017) (emphasis added) (quotation marks omitted). Because this was one of the express bases for the Court's ruling, the narrow exception sometimes permitting "inadequately supported" agency action to be remanded to the agency without vacatur (*see Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993)) is not applicable here at all. And even if it were, both factors—"the seriousness of the order's deficiencies . . . and the disruptive consequences of an interim change that may itself be changed" (*id.* at 150–51 (quotation marks omitted))—require vacatur on the law and facts of this case.

### I. The 2016 Approval Has Serious Deficiencies

**A.** This Court held that MARAD "(1) failed to consider an important aspect of the problem, (2) based its decision on different grounds than those now pressed by the agency and the intervenor, or (3) failed to articulate the reasoning behind its decision with sufficient clarity to enable this Court to understand the basis for its decision." MSJ Order 32 (citations, alterations, and quotation marks omitted). Each defect independently warrants vacatur; collectively, vacatur is unavoidable given "the seriousness of the order's deficiencies." *Allied-Signal*, 988 F.2d at 150.

*First*, as noted at the outset, the D.C. Circuit has recognized that "the court must *vacate* a decision that entirely failed to consider an important aspect of the problem." *SecurityPoint*, 867 F.3d at 185 (emphasis added) (quotation marks omitted). Given MARAD's total failure to address whether calling Saipan rendered the APL SAIPAN ineligible for the MSP fleet (*see* MSJ Order 3, 28–29), vacatur is the only appropriate remedy. The *Allied-Signal* exception to the APA's mandate does not apply in these circumstances, and no further analysis is required.

"The D.C. Circuit has said that the failure to address an important aspect of the problem is a major shortcoming." *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, — F. Supp. 3d —, 2020 WL 532392, at *13 (D.D.C. Feb. 3, 2020) (citing *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017)). Numerous courts in this District have followed this authority and vacated agency orders that failed to consider an important aspect of the problem. *See, e.g.*, *Philbrick v. Azar*, 397 F. Supp. 3d 11, 32 (D.D.C. 2019) (first *Allied-Signal* favors vacatur where there is a "failure to address a central factor in [the agency's] decision"); *Otay Mesa Prop., L.P. v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 355, 377 (D.D.C. 2018) (vacating where the agency "failed to consider an important aspect of the problem" (quotation marks omitted)).

Here, the Court found that MARAD failed to consider how a vessel that operates in domestic commerce not permitted by a registry endorsement could be eligible for inclusion in the MSP fleet in light of 46 U.S.C. § 53105(a)(1)(A). MSJ Order 32. That defect is not a mere matter of "inadequately explained agency action" (*Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 434 (D.D.C. 2014) (quotation marks omitted)), but rather a threshold legal question that goes to MARAD's authority to approve the vessel for inclusion in the MSP fleet. MARAD "failed to acknowledge crucial statutory ambiguities, and failed to explain how its interpretation of the [MSA] comports with the policy objectives of the

[MSA]." *Humane Soc'y of U.S. v. Kempthorne*, 570 F. Supp. 2d 7, 21 (D.D.C. 2008) (vacating agency action on this ground). MARAD and APL fail even to acknowledge this line of cases, much less explain how this Court could have discretion to remand without vacatur in light of the express finding that MARAD failed to address an important aspect of the problem.

*Second*, the Justice Department's (and APL's) "explanations" for the challenged order not only differ from MARAD's contemporaneous rulemaking, but also in critical aspects actually *contradict* the rationales advanced by MARAD in approving the APL SAIPAN. In its formal memorandum analyzing the APL SAIPAN application, for example, MARAD explained that 46 U.S.C. § 53102(b)(2), as "further clarified by 46 U.S.C. § 53105(a)(1)(A)[,] requires that an eligible vessel be operated exclusively in the foreign commerce or in mixed foreign commerce and domestic trade." AR163. In litigation, both the Department of Justice and APL disavowed this construction of the statute. As the Court recognized, however, "[n]owhere in any of MARAD's exposition is there any suggestion that a replacement vessel need operate in foreign commerce only in part or that § 53105(f) can be read in isolation, without considering § 53105(a)(1)(A)'s exclusivity requirement." MSJ Order 30. On the contrary, MARAD's own regulation makes clear that the exclusivity requirement is a precondition to eligibility. 46 C.F.R. § 296.2.

As the Court recognized, these are "issues of great importance to the MSP." MSJ Order 32. The very fact that the agency's litigation counsel, as well as counsel for the intervenor, refused to defend what the agency actually said in approving the APL SAIPAN reinforces the conclusion that the order should be "set aside."

*Third*, "when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it, the regulation is subject to vacatur under the first *Allied-Signal* factor." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009).

That is precisely the error this Court found here: MARAD "failed to articulate the reasoning behind its decision with sufficient clarity to enable this Court to understand the basis for its decision." MSJ Order 32 (alterations and quotation marks omitted).

APL is incorrect that *Heartland* does not control here because it involved notice-and-comment rulemaking, as opposed to the one-sided administrative proceedings here. APL Supplemental Br. 2 n.2. That Matson had no opportunity to raise objections in the proceedings may explain *why* the agency erred, but that lack of process does not make the agency's error less "serious." The Court already made an analogous ruling, based on a (proper) concession from government counsel. MSJ Order 29. If anything, an agency's obligation to provide an explanation sufficient for a court to evaluate is *higher* where the agency's reasoning will not be tested unless and until it is before a court on an administrative challenge.

**B.** MARAD and APL speculate that MARAD "may be able to substantiate its decision on remand" (MARAD Supplemental Br. 2; *see also* APL Supplemental Br. 1). But vacatur may be avoided on this basis only when the agency's failure is one of an *inadequate* explanation, not when there is no explanation at all. *None* of the cases MARAD or APL cites involved an agency's failure to "consider an important aspect of the problem" or "articulate the reasoning behind its decision with sufficient clarity to enable this Court to understand the basis for its decision." *See, e.g.*, *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008); *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 950 (D.C. Cir. 2004); *WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002). In fact, two of these cases *distinguished* the situation where "an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it." *Heartland*, 566 F.3d at 199; *see also Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 317 F. Supp. 3d 385, 391 (D.D.C. 2018) (same).

Moreover, it is far from clear that MARAD could offer any explanation that would be legally sufficient to authorize the approval of the APL SAIPAN. The Court stated that the "answer" to the question of whether Section 53105(a)(1)(A)'s exclusivity requirement attaches at the eligibility phase "is not obvious." MSJ Order 24.[*] However, the structure and context of the statute certainly support MARAD's contemporaneous conclusion that § 53105(a) "clarifies" § 53105(b), a conclusion consistent with (to the extent it is not compelled by) MARAD's own regulations. *Id.* at 26–27. To reach a contrary conclusion, MARAD would have to grapple with the statutory text and context, legislative intent, its own previous memorandum, and the regulation defining "foreign commerce" to require exclusivity. And, of course, MARAD would have to explain the reasons for rejecting or departing from its own prior analyses.

And those are not the only issues MARAD must confront on remand. The APL SAIPAN operates in domestic trade with Saipan, but APL has made monthly certifications to MARAD that this vessel and her sibling "operate[] exclusively in U.S.-foreign trade or in 'allowed' mixed foreign and domestic trade" (AR408)—a representation that appears to be demonstrably false. This is not a ministerial question of procedure, but a substantive problem regarding the availability and amount of MSP subsidies that MARAD must address on remand—because even under the Justice Department's suggestion that exclusivity is not required for eligibility, it clearly is required for continued operation. *See Otay Mesa Property*, 344 F. Supp. 3d at 378 (vacatur appropriate where the issues on remand are "substantive" instead of merely "procedural").

As a last-ditch effort, APL—but not MARAD—argues that approval of the APL SAIPAN may be sustained on the alternative ground that a Coast Guard regulation (which is referenced

---

[*] The Court's statement that "[t]he statutory text does clearly resolve the question" appears to be a typo. MSJ Order 24.

nowhere in the MSA) may authorize its carriage to Saipan. APL Supplemental Br. 3. But MARAD has elected throughout this proceeding not to take a position on the effect of that regulation. That APL thinks the regulation is applicable here says nothing about the seriousness of the deficiencies in MARAD's order or the likelihood that MARAD will correct the substantive deficiencies in its order on remand. *See also* Matson MSJ Reply 28–29. Moreover, APL admits that it carries government cargo in "regular liner containership service from the U.S. mainland to Guam and Saipan" (Mensing Decl. ¶ 1), which makes it a "contractor" under the CNMI Covenant, even under its own construction. Trade with Saipan is therefore "coastwise" and independently prohibited by the MSA regardless of the Coast Guard regulation. *See* Matson MSJ Br. 26–27.

## II. Vacatur Would Not Be Disruptive

The second *Allied-Signal* factor—"the disruptive consequences of an interim change"—also weighs in favor of vacatur. *Allied-Signal*, 988 F.2d at 150–51 (quotation marks omitted). MARAD's and APL's arguments to the contrary are unpersuasive for two reasons.

*First*, there is ample capacity in the Pacific trade to carry U.S. government cargo to and from the island territories of Guam and Saipan, even without the APL SAIPAN. Neither MARAD nor APL disputes, because they cannot, that Matson's own vessels have the capacity—in fact, *excess* capacity—to take on the cargo needs of the U.S. government. *See* Lauer Decl. ¶ 9. Despite APL's protestations of self-interest (which are themselves self-serving (*see* APL Supplemental Br. 5)), there is nothing inappropriate about accurately pointing out that APL's allegations of disruptive consequences are inconsistent with the facts. Other courts have recognized that vacatur is proper where the result would be to redistribute "tasks that would otherwise have to be performed by" one party to other parties that are equally capable of performing that task. *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010). The government's cargo will be carried.

APL maintains that the APL SAIPAN is "especially militarily useful because of its small

size and 'self-sustaining container handling gear.'" APL Supplemental Br. 5–6. But Matson operates a U.S.-flagged vessel of similar size with the same container-handling gear as the APL SAIPAN. Lauer Decl. ¶ 10. Nor does any hypothetical (and unproven) difference in costs justify remand without vacatur—"[t]he fact that there may be some costs . . . associated with the rescission does not mean that there should be an exception from the default rule that arbitrary and capricious agency action be set aside." *Reed*, 744 F. Supp. 2d at 120; *see also Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 118 n.30 (D.D.C. 2011) ("'[C]osts' or 'field-level effects' associated with vacatur are an insufficient justification for refusing to vacate").

*Second*, the narrow relief of remand without vacatur is not available where "the forecasted harms are imprecise or speculative." *Pub. Emps. for Envtl. Responsibility v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 3 (D.D.C. 2016). Vacatur of agency action will always make someone—the regulator or the regulated, or both—unhappy, but MARAD's and APL's bare desire to keep this vessel under contract, when they took no steps during the more than three years of this litigation to prepare for that contingency, is not sufficient.

MARAD argues that if the Court vacates the 2016 approval, "the fleet would contain only 59 vessels, rather than the Congressionally-intended 60." MARAD Supplemental Br. 4. But the current 60-vessel limit merely represents the congressional appropriation of funds to pay MSA subsidies (which has changed several times over the course of the program). All of the vessels in the MSP fleet undergo periodic service and refitting; there is no evidence that they all sail simultaneously. And there is no evidence, beyond MARAD's desire to have one additional vessel at its disposal, of any national security consequences from the absence of one containership—in the 24-year history of the MSP, the U.S. government has never exercised its emergency powers under the operating agreements to commission the MSP vessels into military service. Lauer Decl.

¶ 14. MARAD's declaration establishes, at most, that the government would like another ship at its disposal, but every commander wants more materiel. Nothing in that declaration even hints that warfighting would be compromised by requiring MARAD to follow the law.

Indeed, after raising the specter of military readiness at the hearing, APL refuses to tell this Court whether it will suspend operation of the APL SAIPAN if the approval order is vacated. *See* APL Supplemental Br. 5 (vacatur "would thus force APL to *potentially* suspend or discontinue its service" (emphasis added)). That is perhaps because the statute requires MSP vessels to be "commercially viable." 46 U.S.C. § 53102(b)(4)(B). Moreover, APL knows exactly how much the MSP subsidies are, and it knows the value of its current government carriage contracts, which are reviewed and renewed annually. *See* 46 U.S.C. § 53104(a). Tellingly, for years, Matson has operated in the very same trade without *any* subsidies whatsoever—APL's claim that Matson's vessels are "subsidized" by the Jones Act is simply false. Lauer Decl. ¶ 15. The Court is therefore justified in concluding that even if the subsidies were revoked or suspended, the APL SAIPAN would continue sailing. Given the opportunity, APL has not said otherwise.

But, to remove any doubt, consistent with its existing obligations under the Voluntary Intermodal Sealift Agreement ("VISA"), Matson commits to offer the services of all five of its vessels in the Guam Service to cover lost shipping capacity for the U.S. government due to the removal of the APL SAIPAN from the MSP, in the event the APL SAIPAN is unavailable to provide carriage or APL is unwilling to do so. Lauer Decl. ¶ 13. It also has three additional vessels that it could mobilize for use in the Guam Service if necessary in the event of national emergency. *Id.* ¶ 12. There is no reason to believe vacatur would be disruptive.

**CONCLUSION**

For the foregoing reasons, Matson respectfully requests that this Court vacate the 2016 approval of the APL SAIPAN and remand to the agency for further proceedings.

Respectfully submitted.

Dated: June 12, 2020

*/s/ Mark A. Perry*

Mark A. Perry, DC Bar No. 438203
MPerry@gibsondunn.com
Joshua M. Wesneski, DC Bar No. 1500231
JWesneski@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

*Counsel for Plaintiff Matson Navigation Company, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.3, I hereby certify that, on June 12, 2020, I caused to be served on Defendants the foregoing Supplemental Brief in Support of Vacatur via CM/ECF.

Dated: June 12, 2020

*/s/ Mark A. Perry*
Mark A. Perry, DC Bar No. 438203